# Exhibit A

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. SUCV2013-1780C

| | |
|---|---|
| TRUSTEES OF THE STONEGATE CONDOMINIUM TRUST, Plaintiff, | ) ) ) ) |
| v. | ) ) |
| BRENDA E. MCCARTHY a/k/a BRENDA MCCARTHY-TRAYAH, Defendant/Third Party Plaintiff, | ) ) ) ) |
| v. | ) ) |
| MARCUS, ERRICO, EMMER & BROOKS, P.C., GREEN TREE SERVICING, LLC, AND  GMAC MORTGAGE, Third Party Defendants. | ) ) ) ) ) |

## <u>NOTICE OF BANKRUPTCY AND SUPPLEMENTAL SERVICING ORDER</u>

Third Party Defendant and debtor, GMAC Mortgage, LLC f/k/a GMAC Mortgage

Corporation ("GMACM"), by and through its undersigned counsel, in accordance and consistent

with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code"), submits this Notice of Bankruptcy and Supplemental Servicing Order, and

states as follows:

1.      On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of

its direct and indirect subsidiaries, including GMACM (collectively, the "Debtors"), filed

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States

1

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' Chapter 11 cases being jointly administered, indexed at case number 12-12020 (MG).

2.     As a result of the Bankruptcy Filing, on the Petition Date, the protections of the automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors. Section 362(a), among other things, operates as an automatic stay of: (i) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' Chapter 11 estates (11 U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.     On July 13, 2012, the Bankruptcy Court entered a final supplemental order granting, among other things, the Debtors' motion for limited relief from the automatic stay to permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and title disputes to continue to assert and prosecute certain defenses, claims and counter-claims (the "Final Supplemental Order"). Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order identify the categories of defenses, claims and counter-claims for which the automatic stay has been modified (the "Permitted Claims"). A copy of the Final Supplemental Order is attached hereto as **Exhibit A**.

4.     As set forth in the Final Supplemental Order, Permitted Claims are those asserted by a borrower, mortgagor, or lienholder that relate "exclusively to the property that is the subject of **the loan owned or serviced by a Debtor** for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial

2

#1828828

State, or eviction proceedings." (Ex. A, ¶ 14(a) (emphasis added).) Claims for monetary relief of any kind or nature and claims "for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction" are not Permitted Claims. (Id. at ¶ 14(b).)

5.      To the extent that the defenses, claims and counter-claims do not constitute Permitted Claims, they remain subject to the automatic stay and the continued prosecution of these claims is prohibited ("Stayed Claims").

6.      On or about October 16, 2013, Third Party Plaintiff (the "Plaintiff") filed this third party complaint against GMACM, who issued Plaintiff a mortgage loan in 1998 and subsequently serviced the loan, and cross-claim against *inter alia* Green Tree Servicing, LLC, the current loan servicer. In the Complaint, Plaintiff alleged *inter alia* that after she received a discharge of the debt owed to GMACM, Green Tree improperly continued to seek payment from her in violation of the Fair Debt Collection Practices Act and Massachusetts' Consumer Protection Statute, G.L. c. 93A. *Complaint*, ¶¶ 13-14, 16-27. Although Plaintiff does not allege that GMACM committed any wrongful conduct,[1] she asserts a claim for violation of G.L. c. 93A against GMACM requesting monetary damages and attorneys' fees. *Complaint*, ¶¶ 21-27.

7.      Here, GMACM neither owns nor services the loan. In particular, GMACM has not owned the loan since 2004 and all servicing of the loan was transferred to Green Tree. Accordingly, Green Tree was not and is not servicing the loan on behalf of GMACM or

---

[1] Plaintiff's only allegation concerning GMACM is that it filed a motion for relief from stay on November 6, 2012 in order to foreclose a mortgage on certain real property. *Complaint*, ¶ 12. Although claims related to post-petition conduct by GMACM may proceed under the Final Supplemental Order, Plaintiff does not allege that this conduct was wrongful or otherwise improper. Rather, it appears to be provided for background purposes only.

3

#1828828

otherwise attempting to collect a debt on behalf of GMACM. Further, GMACM ceased servicing the loan on or about February 1, 2013. Pursuant to the Final Supplemental Order, the claims against GMACM are Stayed Claims and the continued prosecution of these claims against GMACM is prohibited.

8.      Pursuant to Paragraph 23 of the Final Supplemental Order, any dispute regarding the extent, application and/or effect of the automatic stay under the Final Supplemental Order, must be heard and determined in the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 12-12020, in accordance with the Case Management Order entered in the Debtors' case [Docket No. 141] and such other and further orders as may be entered by the United States Bankruptcy Court for the Southern District of New York.[2]

                                        Defendant
                                        GMAC MORTGAGE, LLC
                                        By its attorneys,


                                        Amy B. Hackett (BBO# 676345)
                                        ahackett@princelobel.com
                                        Richard E. Briansky (BBO# 632709)
                                        rbriansky@princelobel.com
                                        Thomas R. Sutcliffe (BBO# 675379)
                                        PRINCE LOBEL TYE LLP
                                        100 Cambridge Street, Suite 2200
                                        Boston, MA 02114
Dated:  December 5, 2013                 617-456-8000

---

[2] A copy of the Case Management Order may be obtained at no charge at http://www.kccllc.net/rescap.

<u>CERTIFICATE OF SERVICE</u>

I, Thomas R. Sutcliffe, certify that on December 5, 2013, I served a copy of the foregoing document on counsel for all parties by delivering a copy of the same by first class mail.

Daniel Goldsmith Ruggiero, Esq.
P.O. Box 291
Canton, MA  02021

Janet Oulousian Aronson, Esq.
45 Braintree Hill Office Park, Suite 107
Braintree, MA 02184

Thomas R. Sutcliffe

5

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

### FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.



1212020120713000000000011

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

2

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and after due deliberation thereon; and any objections to the Motion, including the

NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient

cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is GRANTED on a final basis, as set forth herein, and any

objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.     The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs including honoring all

obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively,

the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by

the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed

to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the

Committee or further order of the Court; provided, further, however, that to the extent the

Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the

difference between the actual amount and the Monthly Cap in any succeeding month.  The

Debtors shall provide monthly reports to the Committee and the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

ny-1046923

form agreed to by the Debtors and the Committee and such additional information as shall be reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

      3.    Cash payments made by the Debtors to individual borrowers under the Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2 million in the aggregate, absent consent of the Committee or further order of the Court. For the avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph 3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12 hereof.

Settlement Procedures

      4.    The Debtors are authorized, but not directed to compromise and settle certain claims brought by the Debtors against any non-insider third parties in connection with foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-tiered procedures (the "Settlement Procedures"):

> Tier I: The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts not to exceed $40,000 in full settlement of such Claim (each, a "Tier I Settlement").

> Tier II: The Debtors may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts exceeding $40,000 but less than $100,000 in full settlement of such Claims (each, a "Tier II Settlement"); provided, that in each case:

>     (a) The Debtors must provide advance written notice (by formal or informal means, including by e-mail correspondence) of the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

      (b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline"). Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

      (c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences. Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases. An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

      (d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.      The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.      The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

where the Debtors are releasing claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

7.     The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims.  For claims relating to matters specified in paragraphs 14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition Date, but where such settlement has not been consummated, the Debtors are authorized, but not directed to, consummate said settlements in accordance with the Settlement Procedures set forth in this Order.

8.     Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court.

9.     Nothing in this Order or the Motion shall constitute a determination or admission of liability or of the validity or priority of any claim against the Debtors, and the Debtors reserve their rights to dispute the validity or priority of any claim asserted.

10.     The authority granted in this Order shall not replace or obviate the need to comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements contemplated in the Motion.  All settlements made pursuant to the Settlement Procedures shall, to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time; provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with notice of any material changes to the Internal Settlement Protocol.

6

11.　　The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

12.　　Cash payments made by the Debtors under the Settlement Procedures shall not exceed $4 million in the aggregate, absent consent of the Committee or further order of the Court.

13.　　Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.　　The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a)　　except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or

7

eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b)   absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)   absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)   under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)   the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

> (f)       nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.    The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who currently has filed, or in the future files, for bankruptcy protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby modified pursuant to the following terms and conditions:

> (a)       except as set forth herein, a Bankruptcy Borrower or a trustee duly appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a "Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to determine the validity, priority or extent of a Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce (including to reduce to $0) or fix the amount of the Debtors' claim or lien against the Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through (iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

9

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi) above;

        (b)    except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

        (c)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or federal statute or other law in connection with the origination of the Bankruptcy Borrower's loan; (iii) for relief that if granted, would have no effect on the amount, validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or (iv) asserted in the form of a class action or collective action; provided however, a Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by 15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph 15(c);

ny-1046923

(d)      absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)      with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)      the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)      nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.      The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

11

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a)  except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b)  the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c)  the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d)  the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

D.  *Actions Involving Amount, Validity Or Priority Of Liens*

17.  The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

12

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

    (a)    except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

    (b)    absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

    (c)    absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

    (d)    under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

    (e)    the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

13

clear and marketable title with respect to such property in connection with any sale, foreclosure or other disposition of such property;

(f)     the Debtors shall retain the right, upon appropriate motion and notice to any affected Third Party Claimant, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by the Order; and

(g)     nothing set forth herein shall preclude or limit any Third Party Claimant from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

18.     The Debtors shall continue to perform all of their respective servicing duties and servicing related duties, including, but not limited to, their duties as master servicer, under all the governing agreements (including, without limitation, pooling and servicing agreements, servicing agreements, or any other agreements concerning or relating to the Debtors' obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions and non-Debtor sponsored securitization transactions to which any of The Bank of New York Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors is a party, including but not limited to, making all principal, interest or other servicing advances (including property protection advances) and reimbursing, indemnifying, defending and holding harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

14

or expense (including fees and disbursements of counsel or agents) incurred by any of the Trustees in the performance of their duties or their administration of the trusts or other agencies under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in connection with reviewing and analyzing the request by the Debtors to approve the MBS Settlement Agreement, and in connection with reviewing and analyzing amendments to the Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or other requirements of the Agreements, or make any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or (ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the Agreements under which such other Debtor entity or non-Debtor affiliate are required to repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or other requirements of the Agreements, or make any make-whole payments with respect to any mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to impose liability on any Debtor with respect to such alleged breaches or make-whole payment requirements.

19.     The Trustees shall submit invoices to (a) counsel to the Debtors, (b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an itemization of all professional fees by task with a detailed description of the work performed in connection with such task, (ii) a description of related expenses, and (iii) a description of any indemnity claims.  Thereafter, within thirty (30) days of presentment of such invoices, if no

15

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

       20.    To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

16

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

21.     If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date").  Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.     Notwithstanding the Debtors' obligations set forth in paragraphs 18 and 19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

23.     Any disputes regarding the extent, application and/or effect of the automatic stay under this Order shall be heard and determined in the Debtors' jointly administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

17

District of New York, Case No. 12-12020 in accordance with the Case Management Order entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be entered by the Court.

24.    The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

25.    Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

26.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

27.    Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings. All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

28.    Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

ny-1046923

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated:      July 13, 2012
            New York, New York


                              /s/Martin Glenn
                              MARTIN GLENN
                         United States Bankruptcy Judge

ny-1046923